**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| Renea Walker, | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 24 C 1784 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| Costco Wholesale Corporation | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Renea Walker slipped and fell on grapes while shopping in Costco. Defendant Costco Wholesale Corporation moves for summary judgment because it claims it had no knowledge of the alleged hazardous condition, breached no duty to Walker, and the hazardous condition was open and obvious. (Dkt. 55 at 3). Walker opposes Costco's motion. (Dkt. 61). Because there are genuine issues of material fact, the Court denies Costco's motion. (Dkt. 53).

## BACKGROUND

On March 8, 2022, Walker went shopping with her friend at the Costco in North Riverside, Illinois. (Dkt. 59, ¶ 4). While shopping, Walker pushed her cart down an aisle to get some whipped cream. (*Id.*, ¶¶ 6-7). As she approached the cooler to browse and select some whipped cream, she left her shopping cart behind and took about 8 or 9 steps towards the cooler. (*Id.*, ¶ 8). Her view was unobstructed. (*Id.*, ¶ 9). She saw nothing on the ground. (*Id.*, ¶ 11). Once she got to the cooler, she opened it, reached down, grabbed cool whip, closed the door, turned around, and began to take her first step back to her shopping cart. (*Id.*, ¶¶ 11-14). As she took her first step towards her cart,

1

her foot did not land on dry ground but on slippery grapes. (*Id.*, ¶¶ 14-16). Suddenly losing traction, she wobbled, slid, and fell onto the ground. (*Id.*)

## LEGAL STANDARD

"Summary judgment is appropriate when the moving party shows 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054 (7th Cir. 2026) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant "bears the burden of showing that summary judgment is appropriate" and that these requirements have been met. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The movant "may discharge this responsibility by showing that there is an absence of evidence to support the nonmoving party's case." *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 295 (7th Cir. 2018) (quotes omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To overcome a motion for summary judgment, the "nonmoving party must provide specific material facts showing there is a genuine issue for trial." *Tech. Sec. Integration, Inc. v. EPI Techs., Inc.*, 126 F.4th 557, 560 (7th Cir. 2025); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party who fails to produce evidence sufficient to show an element essential to his case on which he bears the burden cannot survive a summary judgment motion." *Gills v. Hamilton*, 164 F.4th 640, 644 (7th Cir. 2026).

## DISCUSSION

I.      **Premises Liability**

2

Costco moves for summary judgment solely on the knowledge requirement for premises liability. (Dkt. 55 at 4). Costco asserts that its "employees lacked actual knowledge that the grapes were on the ground" and that the grapes at issue "were in an area of the warehouse where they [are] not stocked or sold"—because "the produce section [is] on the other side of the warehouse." (*Id.*) Costco further contends that no "Costco employees witnessed the fall or saw the grapes before the incident," and there is no evidence "how long the grapes were on the floor[.]" (*Id.*) In addition to all this, Costco maintains that it has "reasonable inspections and procedures in place," with all "Costco employees . . . trained to pick up debris from the floor." (*Id.*) Yet, with "[a]t least five Costco employees walk[ing] through the cooler aisle that day" and its "hourly floor walks to check for debris," none "notice[d] the grapes." (*Id.*)

Walker responds that Costco must have had actual notice because there "are only two ways to explain why grapes were present in the cooler aisle": (1) "they were dropped there by a Costco employee"; or (2) "they were transported from the opposite side of the store by a customer, who opened a secured grape container and dropped them in the whip cream aisle while shopping." (Dkt. 61 at 2). Between these two, Walker states that the "evidence supports that the grapes were dropped by a Costco employee" because Costco stored the grapes near where Walker fell and carried them through this aisle via forklift the morning of the accident. (*Id.* at 2-3). Walker asserts that "[w]here a foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive." (*Id.* at 4) (citing *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 438 (1958)). Walker relies on *Wind v. Hy-Vee Food Stores, Inc.*, for the proposition that "if the plaintiff shows the substance is related to the defendant's business *and* offers some slight evidence that the defendant or his servants, rather than a customer, placed the substance on the floor, then the court will allow the jury to consider the issue of the defendant's

3

negligence without requiring proof of the defendant's actual or constructive knowledge." (*Id.*); 650 N.E.2d 258, 262 (3rd Dist. 1995).

Even if Costco lacked actual notice, Walker asserts that the "morning produce stockers stopped stocking at 10:00 a.m., and [Walker] fell at 6:30 p.m.," suggesting that "the grapes were likely dropped during morning produce stocking, leaving them on the floor for a minimum of seven and a half hours." (*Id.* at 5). So, Costco failed "to realize that grapes were falling while being loaded onto the forklift and/or in transport," ensure that "open grape container[s]" were not spilling during transportation, or "remove the grapes" during the "seven and a half hours" from when they were dropped to when Walker fell. (*Id.*) Even if the floor walkers were doing their job throughout the day, Walker also asserts that Mr. Jestczemski failed to discover them during his 6pm floor check—meaning that the hazard was present for about 30 minutes before Walker fell. (*Id.* at 5-9). Which, Walker contends, "is long enough that the[] [grapes] should have been discovered during a proper floor walk, or by the cooler stocker stationed in the aisle." (*Id.* at 9) (citing *Cruz v. Costco Wholesale Corporation*, 134 F.4th 984, 989 (7th Cir. 2025)) (holding that 28 minutes prior to the Plaintiff's fall is enough time "to allow a reasonable jury to find constructive notice and thus to preclude summary judgment").

Costco counters by pointing out that Walker "cannot present any evidence of how the grapes came to be on the warehouse floor" and so Walker relies "on speculation that Costco created the alleged condition [by] stocking grapes through the aisle where Plaintiff fell." (Dkt. 65 at 2) (emphasis removed). Walker's position must therefore fail, Costco contends, because "there is no direct evidence that Costco caused the grapes to be placed on the floor." (*Id.* at 3). Costco further asserts that it did not create the condition (i.e., cause the grapes to be on the ground) because "grapes were stored in the produce cooler on the other side of the warehouse and would not have

4

been driven by a forklift driver through the cooler aisle." (*Id.* at 3-4) (emphasis removed). Costco concludes that "even if Costco owed a duty under an ordinary negligence theory, there is no evidence of breach. Costco had floor walkers perform hourly inspections and all employees were responsible for cleaning the floor"; "therefore it did not breach any duty" to Walker. (*Id.* at 4-5).

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Carney v. Union Pac. R. Co.*, 2016 IL 118984, ¶ 90 (quoting Restatement (Second) of Torts § 343 (1965)); *Genaust v. Illinois Power Co.*, 62 Ill.2d 456, 468 (1976); *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill.2d 14, 26 (1992). "Actual notice will be found where there is evidence that the defendant or its employee had been notified of the dangerous condition prior to the plaintiff's slip and fall." *Haslett v. United Skates of Am., Inc.*, 2019 IL App (1st) 181337, ¶ 52. "Constructive notice can only be shown where the dangerous condition is shown to exist for a sufficient length of time to impute knowledge of its existence to the defendants." *Babich v. Copernicus Found.*, 2019 IL App (1st) 181537-U, ¶ 22 (quoting *Ishoo v. General Growth Properties, Inc.*, 2012 IL App (1st) 110919, ¶ 28)).

There is no evidence of actual notice. *See supra* at 1-4. No witness testified that they saw the grapes that Walker allegedly slipped on. *Id.* There were no cameras recording the aisle where Walker allegedly fell. *Id.* There is, however, a genuine issue of material fact for constructive notice. "In a case such as the instant one, where the plaintiff alleges constructive notice, the time element to establish constructive notice is a material factor . . . and it is incumbent upon the plaintiff to

establish that the foreign substance was on the floor long enough to constitute constructive notice to the proprietor. If there is evidence tending to show constructive notice, then the issue of negligence will be submitted to the jury." *Hayes v. Bailey*, 80 Ill. App. 3d 1027, 1030 (1980); *Tafoya-Cruz v. Temperance Beer Co., LLC*, 2020 IL App (1st) 190606, ¶ 59. "Illinois law recognizes that there is no bright-line rule indicating the requisite time to establish notice, though periods in excess of ten minutes have failed the test." *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 483 (7th Cir. 2008) (citing *Hayes,* 80 Ill.App.3d 1027). *Id.* "Rather [the Court must look] to the circumstances of the particular case to determine if the length of time gave rise to notice." *Id.* (citing *Peterson,* 241 F.3d at 605).

Walker admitted that Costco employee Mr. Jastczemski "performed a floor walk from 5:45-6:01" and "did not observe any items on the ground in the cooler aisle when he completed his floor walk approximately 30 minutes before Walker fell." (Dkt. 59, ¶¶ 44, 47). Yet, Costco admitted that "[o]verstock grapes were stored in the cooler area where [Walker] fell," "[p]roduce stockers were present at the store from 4:00 a.m. or 5:00 a.m. until 9:00 p.m.," and that "morning stockers would move produce to the sales area in the morning, between 4:00 a.m. and 10:00 a.m." (Dkt. 60, ¶¶ 27-28).[1] If Mr. Jastczemski completed his floor walk around 6 p.m., and if Walker fell around 6:30 p.m., the evidence may show that the grapes were on the floor anywhere from 30 minutes to but a

---

[1] Costco failed to respond to Walker's Statement Of Additional Material Facts Supporting The Denial Of Costco's Motion For Summary Judgement. (Dkt. 60); *see* Local Rule 56.1(b)(2), (c)(2). This results in all facts being deemed admitted. Local Rule 56.1(e)(3). The Court requires "strict" compliance with its rules and procedures: "[m]otions for summary judgment and responses must comply with Local Rules 56.1(a) and 56.1(b), as well as the procedures outlined herein. . . . Failure to abide by the Local Rules may result in the Court striking briefs, disregarding statements of fact, deeming statements of fact admitted, or denying summary judgment." *See* Chamber's Case Procedures – Motions for Summary Judgment (https://www.ilnd.uscourts.gov/judge_display.php?LastName=Kendall); Local Rule 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."); *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 929 n.2 (7th Cir. 2018) ("We have consistently held that a failure to respond . . . as mandated by the local rules results in an admission.") (quotes omitted); *McCurry v. Kenco Logistics Servs.*, LLC, 942 F.3d 783, 787 (7th Cir. 2019) (affirming finding facts admitted when party failed to properly respond); *Sentinel Ins. Co., Ltd. v. Majestic Auto Glass Inc.*, 2026 WL 663820, at *3 (N.D. Ill. Mar. 10, 2026) (statement of facts deemed admitted when party failed to respond); *Duran v. Chief Judge of Cir. Ct. of Cook Cnty.*, 2026 WL 663405, at *2 (N.D. Ill. Mar. 10, 2026) (same).

few moments before the incident—meaning Costco may have had no constructive notice. *See Hillsamer v. Walmart, Inc.*, 2022 WL 4079451, at \*7 (N.D. Ill. Sept. 6, 2022) (granting Defendant's motion for summary judgment and ruling that Plaintiff "can only establish the spill was on the ground for at least fifteen minutes, and other than pointing to general housekeeping policies, she does nothing to show fifteen minutes sufficient under the circumstances for Walmart to have had constructive notice of the spill"). In contrast, these grapes may have been on the ground for hours— if not from the start of the day when the stockers began their initial rounds. *Supra* at 4-5. Under that scenario, with Costco conducting hourly floor walks and with "at least five employees . . . pass[ing] through the area where Walker fell," that surely would be sufficient to imbue Costco with constructive notice. (Dkt. 59, ¶¶ 28, 37-48); *see Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 124-25 (7th Cir. 1988) (collecting "cases where evidence established that a dangerous condition was present for a long enough period of time to put the defendant on constructive notice" including *Arden v. Chicago Transit Authority,* 89 Ill.App.2d 214 (1st Dist. 1967), "where debris was present on a stairway for at least three hours prior to an accident, such debris usually accumulated on the stairs, the area had poor lighting and the defendant improperly directed the plaintiff to use the stairs" and *Guidani v. Cumerlato,* 59 Ill.App.2d 13 (1965) "where water in a bathroom was spotted by an uninjured patron forty-five to sixty minutes before the plaintiff slipped").

The genuine issue of material fact is further borne out by the evidence that Costco routinely patrolled the aisles for spills. *Supra* at 3, 5. That works against Costco because—had the grapes been there for hours—Costco should have, but failed to, clean the aisle. *See Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) (denying summary judgment and noting that "presenting evidence . . . that its employees patrol the aisles constantly for signs of spills" "implies . . . that the employees may have been careless not to have noticed the spilled lotion").

Ultimately, a "reasonable jury could find . . . that Costco, in 'the exercise of ordinary care,' should have discovered" the grapes—even if they were there for only "28 [or 30] minutes—and that Costco therefore had constructive notice of the danger." *Cruz v. Costco Wholesale Corp.*, 134 F.4th 984, 989 (7th Cir. 2025) (citing *Thompson v. Economy Super Marts, Inc.*, 221 Ill. App. 3d 263, 265 (1991)). "Illinois courts have emphasized that 'whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on its property is a question of fact.'" *Id.* (citing *Heider*, 2019 IL App (1st) 181173, ¶ 34 and *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 229 (1994)). The Court denies Costco's motion for summary judgment as to Walker's premises liability claim. *Id.*

## II.    Negligence

Costco moves for summary judgment solely on the breach of duty element of Walker's negligence claim. (Dkt. 55 at 5-7). Costco contends that Walker's negligence claim must fail because "the undisputed evidence shows that Costco sufficiently stocked grapes and monitored the store, and therefore Costco did not breach any duty owed to" Walker. (*Id.* at 6). Walker asserts that Costco created the dangerous condition by causing the grapes to fall and remain on the ground for an unreasonably dangerous amount of time. *Supra* at 1-4, 6-7.

To succeed on her negligence claim, Walker must "prove (1) a duty owed by defendant to plaintiff, (2) a breach of that duty, and (3) an injury proximately resulting from that breach." *Ruda v. Jewel Food Stores, Inc.*, 2024 IL App (1st) 230582, ¶ 39 (citing *Carney v. Union Pac. R. Co.*, 2016 IL 118984, ¶ 6).

Costco ties its position to what it asserts is "undisputed evidence." This fails because Costco's admissions create a genuine issue of material fact. Costco states that "the grapes were sold in a produce cooler on the opposite side of the warehouse from where Walker fell,

8

approximately 90 yards away." (Dkt. 55 at 6). Yet, Costco admitted that "[o]verstock grapes were stored in the cooler area where [Walker] fell." (Dkt. 60, ¶ 27). Costco contends that the "grapes were sold in clamshell containers that either snapped shut and had a cardboard sleeve around the contain[er] or the containers were taped closed." (Dkt. 55 at 6). But Costco admitted that "customers could eat grapes while walking the store." (Dkt. 60, ¶ 32). Costco asserts that its "produce stockers keep the department clean, make sure that produce containers are closed," and "do not place broken or opened produce packaging onto the warehouse floor[.]" (Dkt. 55 at 6). Yet, Costco conceded that "morning produce stockers were present in the area of [Walker's] fall . . . mov[ing] stock from the coolers to the produce section of the floor," "[o]verstock grapes were stored in the cooler area where [Walker] fell," "[f]orklift drivers would use the aisle where Ms. Walker fell on while stocking grapes in the morning," and, critically, that Mr. Jastczemski failed to properly inspect the aisle where Walker fell just minutes before the accident occurred. (Dkt. 60, ¶¶ 12, 19, 27, 29) (emphasis removed).

Costco repeatedly asserts that its various employees inspected, walked through, and were trained to clean "every aisle of the warehouse floor, including the area where Walker fell." (Dkt. 55 at 6-7). These points do not affect the outcome. Costco conceded that Mr. Jastczemski violated its policies and procedures by failing to inspect the aisle just moments before Walker fell. (Dkt. 60, ¶ 12). Costco admits that "[f]loor walks require the floor walker to physically traverse the aisle" because "The Floor Walk sheet" requires the employee to "'physically walk down each aisle inspecting for unsafe conditions and potential hazards.'" (*Id.*, ¶ 8). This is true for the aisle Walker fell in. (*Id.*) Despite this, Costco concedes that Mr. Jastczemski—who was assigned to inspect the floors just 30 minutes before Walker fell—violated Costco's policy by not physically walking down the aisle where Walker fell. (*Id.*, ¶ 12). In fact, Mr. Jastczemski, who had been employed at

Costco for over a decade, "would ***never*** traverse the aisle where Renea Walker fell during a floor walk" because "to go down each aisle would mean that the job of a floor walker would never stop." (*Id.*, ¶¶ 12-13) (emphasis added). Costco asserts that Mr. Jestczemski "did not observe any items on the ground in the cooler aisle when he completed his floor walk"; but this does not alter the analysis. (Dkt. 59, ¶ 44); (Dkt. 60, ¶ 8). Mr. Jestczemski's failure to follow Costco procedure, physically walk down the aisle, and adequately inspect the ground for dangerous conditions creates a genuine issue of material fact as to whether Costco breached its duty of care to Walker.[2]

The remainder of Costco's points are not germane to the specific alleged issue. Walker did not allege a widespread systemic failure to create or establish cleaning or stocking policies. She alleged a single isolated incident. The specific lapse in care she alleges caused her harm is the singular focus of her alleged breach. While Costco's policies may signify admirable cleaning measures as a whole, they are immaterial to whether Costco breached its duty of care with respect to the isolated alleged incident. On summary judgment the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 (7th Cir. 2008) (quoting *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003)). The Court denies Costco's motion for summary judgment as to Walker's negligence claim.

---

[2] Moreover, grapes are small and difficult to see from a distance. Mr. Jestczemski insinuated that his eyesight was poor. Taken together, there is a genuine factual dispute whether merely walking by the aisle—instead of physically walking down it—suffices to guard against smaller or transparent hazards like grapes or liquids. (*See* Dkt. 62-7 at 28, Dep. Tr. 50:13-19).

### III. Open and Obvious

Costco seeks summary judgment on Walker's claims because "the bright green grapes contrasted against the grey polished concrete floor of the warehouse" and were "open and obvious." (Dkt. 55 at 8-9). Costco points out that "Walker admitted that she was not distracted," "did not see the grapes," and "nothing . . . blocked [her] view of the ground as she walked towards the cooler." (*Id.* at 9). "Although she had been pushing a shopping cart," Costco notes that Walker "stopped approximately 8-9 steps away from the cooler," and so "the cart did not block her view." (*Id.*) Costco argues that it "is entitled to the expectation[] that its members will watch where they are walking" because an "objective, reasonable person would also have been aware of their surroundings as they walked down the aisle[] and would have taken their path of travel into consideration to avoid stepping on the grapes." (*Id.*)

Walker responds that it was reasonably foreseeable that Costco would have foreseen this alleged injury because the grapes were stocked in the area where Walker fell, moved through that aisle during stocking, and known to create slipping hazards. (Dkt. 61 at 11). Walker emphasizes that Costco indeed had a specific protocol to address spills just like this one. (*Id.*) Walker also asserts that "she was reasonably distracted" because she "had never been to . . . Costco before" and was focusing on the task at hand. (*Id.* at 12-13). She contends that because of this, Costco's reliance on "relative and imprecise characterizations as 'known' or 'obvious'" is inadequate and, instead, the "Distraction Doctrine" under *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 152 (1990) applies. (Dkt. 61 at 10-13). Thus, Walker asserts that "[t]he inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the condition after having momentarily encountered it. If in

11

fact the entrant was also guilty of negligence contributing to his injury, then that is a proper consideration under comparative negligence principles." (*Id.* at 12) (quoting *Ward*, 136 Ill. 2d at 152).

A business owes its "invitees a duty to exercise reasonable care to maintain [its] premises in a reasonably safe condition." *Davis v. Advoc. Health & Hosps. Corp.*, 2024 IL App (1st) 231396, ¶ 19 (citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141-143 (1990)). "An exception to this general duty of care is the 'open and obvious' doctrine, which states that 'persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious.'" *Id.* (quoting *Henderson v. Lofts at Lake Arlington Towne Condominium Ass'n*, 2018 IL App (1st) 162744, ¶ 40); *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447-48 (1996). The term "obvious" is defined as when "'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.'" *Id.* (quoting *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 17).

"If a dangerous condition is open and obvious, [that] is not an 'automatic bar to finding a legal duty on the part of the landowner.'" *Id.*, ¶ 20. (quoting *Henderson*, 2018 IL App (1st) 162744, ¶ 41). "A landowner may still owe a duty to an invitee if the landowner 'should anticipate the harm despite such knowledge or obviousness.'" *Id.* (quoting *Ward*, 136 Ill. 2d at 149). "Nevertheless, 'where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty.'" *Id.* (brackets removed) (quoting *Bruns*, 2014 IL 116998, ¶ 19).

When conducting this analysis, the Court "must also consider whether . . . an exception to the open and obvious rule applies" (i.e., the exception to the exception). *Bruns v. City of Centralia*,

2014 IL 116998, ¶ 20. "Illinois law recognizes . . . the 'distraction exception.'" *Id.* (quoting *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002)). "The distraction exception essentially holds that even an open-and-obvious condition may still be *unreasonably* dangerous if the landowner should have foreseen that people would fail to notice or protect themselves against the condition because they had become distracted." *Wade v. Wal-Mart Stores, Inc.*, 2015 IL App (4th) 141067, ¶ 27 (citing *Ward v. K mart Corp.,* 136 Ill.2d 132, 152 (1990)).

By some accounts a few grapes on a grocery store floor would pose no risk at all. Imagine a bored child in a store jumping and squashing a couple of grapes on the ground under their shoes. It seems a bit much to call that risky behavior—much less an open and obvious danger. At the same time, however, if the type of floor the grapes were on was known to (or would) become dangerously slippery when wet, then those grapes may pose a more significant risk—especially to certain individuals. The parties agree that "[l]oose grapes on the floor would present a safety/slipping hazard at Costco." (Dkt. 60, ¶ 21). The parties have presented no case, however, where an Illinois court found that a few grapes posed an open and obvious condition. (Dkts. 55, 61, 65). Other states have found that, under certain circumstances, "crushed grapes" can pose an open and obvious condition. *See, e.g.*, *Kennedy v. Great Atl. & Pac. Tea Co.*, 274 Mich. App. 710, 722 (2007) ("The crushed grapes on which plaintiff slipped were open and obvious as a matter of law"). The Court harbors doubts that the grapes were an open and obvious condition, but the outcome remains unchanged either way. Assuming the grapes constituted an open and obvious condition, Costco's position nevertheless fails for two independent reasons.

First, Costco owed Walker a duty because it should—and in fact did—"anticipate the harm" loose grapes on the ground pose to shoppers "despite [the] knowledge or obviousness'" of the grapes' condition. *Davis*, 2024 IL App (1st) 231396, ¶ 19 (quoting *Ward*, 136 Ill. 2d at 149). Costco

13

clearly anticipated precisely the open and obvious harm it claims the grapes pose because of its regimented, hourly floor sweeps, "extensive" cleaning training, and express policies for cleaning. *Supra* at 1-4, 6-7; (Dkt. 61 at 6). There is no evidence showing that Costco failed to anticipate the risks of food, debris, and foreign objects on its aisles.

Second, there is a genuine issue of material fact whether Walker was distracted—and thus whether the distraction exception to the open and obvious exception applies. (*See* Dkt. 59, ¶ 10) (parties disputing whether Walker was distracted). Costco asserts that "Walker admitted that she was not distracted immediately before the incident." (Dkt. 55 at 9). When asked: "As you were walking towards the cooler during those eight or nine steps, was there anything distracting you?" Walker responded: "No." (Dkt. 56-1 at 24, Dep. Tr. 84:11-14). Yet, when asked: "During those eights or nine steps before you approached the cooler or before you arrived at the cooler, were you looking at the ground in front of you?" Walker responded: "No." (*Id.* at 21-22, Dep. Tr. 81:21-82:1). As she approached the cooler she was looking at the cooler, not the ground. (*Id.* at 22, Dep. Tr. 82:2-3) ("Q. Where were you looking at that point? A. The cooler."). This testimony focuses on Walker's state of mind before the slip. When asked what happened during her slip, Walker admitted that she was not distracted: "Was there anything distracting you at that time during that one step? A. No." (*Id.* at 24, Dep. Tr. 84:8-10).

The evidence the parties fight over on this issue ignores the controlling standard. The inquiry is whether **Costco** "should have foreseen that people would fail to notice or protect themselves against the condition because they had become distracted." *Wade v. Wal-Mart Stores, Inc.*, 2015 IL App (4th) 141067, ¶ 27 (citing *Ward v. K mart Corp.,* 136 Ill.2d 132, 152 (1990)). Because the Court has found that Costco owed Walker a duty and that it should have foreseen the condition, denial of summary judgment is proper. Whether Walker was distracted is a question for

14

the jury. *See, e.g.*, *Green v. Jewel Food Stores, Inc.*, 343 Ill. App. 3d 830, 835 (2003) ("We conclude that defendant owed a duty of care to plaintiffs because it was reasonably foreseeable that a customer would be distracted by an unattended shopping cart and trip and fall over the irregular pavement. The duty question having been resolved against defendant based on the distraction exception to the open and obvious rule, it is for the trier of fact to determine whether the elements of negligence are present[.]"); *Williams v. Walmart Inc.*, 2019 WL 2357043, at *4 (N.D. Ill. June 4, 2019) ("A reasonable jury could find that Williams's focus on the merchandise distracted her from the stack base's presence, and that Walmart caused this distraction by placing the merchandise display near the stack base."); *Minnick v. Sam's W., Inc.*, 2018 WL 6101025, at *2 (N.D. Ill. Nov. 21, 2018) ("Immediately before tripping over the detergent container, Minnick was looking at and handling products on display on racks, which is precisely why those products are there on display. A reasonable jury could find that Sam's West had every reason to expect that a shopper's attention might be distracted by displayed products so that she would forget a dangerous condition right next to her, even if she had seen it just before."); *Herrera v. Target Corp.*, 2009 WL 3188054, at *6 (N.D. Ill. Sept. 30, 2009) ("This Court finds, as a matter of law, that Defendant had a duty, as in *Ward,* to protect its customers who are likely to be distracted in the aisles against even open and obvious hazards or forgetful of the condition after momentarily encountering it.").[3]

---

[3] *See also Wilson v. Wal-Mart Stores, Inc.*, 2017 WL 1425598, at *5 (N.D. Ill. Apr. 20, 2017) ("defendant had [a] duty to protect [its] customer from [a] large cleaning machine on [the] store floor, even if it is an open and obvious danger because 'her focus on finding the cosmetic items she wanted to purchase distracted her from noticing the danger the machine posed'") (quoting *Bulduk v. Walgreen Co.*, 63 N.E.3d 975, 981 (Ill. App. Ct. 1st Dist.)); *Geleta v. Meijer, Inc.*, 2013 WL 6797111, at *6 (N.D. Ill. Dec. 23, 2013) ("Plaintiff was at Meijer to shop and was headed toward the chicken products when she fell. It's not a stretch to say that a customer at a grocery store may not be canvassing the ground for spills, but instead might be distracted by finding the items on her grocery list."); *Buchanan v. Whole Foods Mkt. Grp., Inc.*, 2009 WL 1514655, at *7 (N.D. Ill. May 27, 2009) ("In this case, the plaintiff was carrying two grocery items, looking for fish batter, and following one of Defendant's employees to the batter's location. All of these facts distracted Buchanan's attention from the [tripping hazard]."); *Savage v. Ritchie Bros. Auctioneers (Am.)*, 2012 WL 1520710, at *4 (N.D. Ill. Apr. 30, 2012) ("In the context of a store and its invitees, a defendant store has a duty to protect its customers who are likely to be distracted in the aisles against even open and obvious hazards.").

**CONCLUSION**

The Court denies Costco's motion for summary judgment. (Dkt. 53).


_____
Virginia M. Kendall
United States District Judge


Date: April 17, 2026

16